Filed 3/18/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B309273 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BA465424 |
| v. | |
| JONATHAN MAURICE EDWARDS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge. Affirmed.

Miriam K. Billington, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Rene Judkiewicz, Deputy Attorney General, for Plaintiff and Respondent.

———————————

It does not violate the confrontation clause for a judge to order trial witnesses to wear masks during the current pandemic. The Constitution does not require judges to imperil public health.

A jury convicted Jonathan Maurice Edwards of the attempted murder of his cellmate Raul Sanchez Aguayo. (Pen. Code, §§ 664, 187, subd. (a).) The jury found Aguayo suffered great bodily injury. (§ 12022.7, subd. (a).)

As was his right, Edwards demanded a speedy trial. Jury selection began on October 30, 2020. Because of the pandemic, this was the first trial this trial judge had held in eight months. The court told jurors, "First and foremost, we want you to feel comfortable. We want you to feel safe." Therefore "everybody is required to wear masks, and that's at all times." The jury delivered its verdict on November 9, 2020.

I

The judge required everyone in the courtroom, including witnesses, to wear masks. Edwards argued this order infringed his constitutional right to confront witnesses. Edwards moved for an order barring witnesses from testifying through a mask.

The trial court properly denied Edwards's motion on October 29, 2020. The court faced a public health emergency. Everyone did. At that point, the pandemic had killed over 200,000 Americans. (Centers for Disease Control and Prevention, COVID Data Tracker <https://covid.cdc.gov/covid-data-tracker/#trends_totaldeaths> [as of Mar. 14, 2022], archived at <https://perma.cc/2D4A-2QSA>.) The Centers for Disease Control and Prevention's Science Brief was recommending "community use of masks" to reduce the inhalation of respiratory droplets generated when people cough, sneeze, talk, and breathe. (Centers for Disease Control and Prevention, Science Brief:

Community Use of Masks to Control the Spread of SARS-CoV-2 <https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html> [as of Mar. 14, 2022], archived at <https://perma.cc/SB2P-8QKV>.)  The advice was, "Wear cloth masks with

- "A proper fit over your nose, mouth, and chin to prevent leaks[,]
- "Multiple layers of tightly woven, breathable fabric[,]
- "Nose wire[,]
- "Fabric that blocks light when held up to [a] bright light source."  (Centers for Disease Control and Prevention, Types of Masks and Respirators <https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/types-of-masks.html> [as of Mar. 14, 2022], archived at <https://perma.cc/RA35-ZRMQ>.)

It is desirable to make jury duty less dangerous to jurors. The potential danger was not only to jurors, but also to Edwards, and to everyone else in the courtroom.

Also vulnerable to danger would be others outside the courtroom who later encountered these people, and so on, in an increasing swath of multiplying contacts.  A spark in a dry landscape can cause flames.  One cannot say how much will burn.

A mask covering the nose and mouth undeniably impairs jurors' ability to see a witness's face to a degree.  Likewise it is undeniable that judges must not allow a jury trial to spread a deadly contagion.

The words of Thomas Jefferson bear weight.  "A strict observance of the written law is doubtless one of the high duties of a good citizen, but it is not the highest.  The laws of necessity, of self-preservation, of saving our country when in danger, are of

3

higher obligation. To lose our country by a scrupulous adherence to the written law, would be to lose the law itself, with life, liberty, property and all those who are enjoying them with us; thus absurdly sacrificing the ends to the means." (quoted in Brest et al., Processes of Constitutional Decisionmaking: Cases and Materials (5th ed. 2006) p. 66.)

Jefferson's words carry more force where, as here, the court *did* strictly observe the written law. "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." (U.S. Const., 6th Amend.; see also Cal. Const., art. I, § 15 [right "to be confronted with the witnesses against the defendant"].)

According to the constitutional terms, Edwards enjoyed his right to confront the witnesses against him. He and the jurors saw and heard those witnesses. Under oath, the witnesses responded to Edwards's cross-examination. The jurors saw and heard the witnesses' reactions to the confrontation. The masks covered noses and mouths to minimize disease transmission. This was scrupulous adherence to the written law during a public health emergency. The confrontation clause permits a judge to follow national safety guidelines. (See *People v. Lopez* (2022) 75 Cal.App.5th 227, 232–236; *People v. Alvarez* (2022) 75 Cal.App.5th 28, 34–39.)

Edwards cites pre-pandemic cases about witnesses who tried to wear disguises while testifying and so forth.

Several factors distinguish these cases. The trial court in this case was not trying to hide or obscure identities or the truth. It was following national safety guidelines and court orders in response to a deadly and worldwide pandemic. This pandemic potentially affects everyone. The disease spreads through social

4

contact. This pandemic has been long and unpredictable. As Edwards concedes, this issue is novel.

Edwards also cites some federal district court decisions. Only one is published. The court in *United States v. Cohn* (E.D.N.Y. 2020) 481 F.Supp.3d 122, 123 wrote that, "Unless and until medical research yields a successful vaccine or effective treatment, practical tools, like wearing masks, maintaining personal distance and limiting the size, frequency and length of public gatherings, remain the only viable means to control the spread of this terrible disease." This decision is not strong support for Edwards.

Edwards says the trial court instead could have ordered "clear masks" or use of "a face shield with a cloth drape along the bottom." Edwards offered no evidence an objective authority appraised these alternatives to be effective in combatting the disease's spread.

## II

Edwards incorrectly argues the finding that he inflicted great bodily injury on Aguayo lacked substantial evidence.

For this case, great bodily injury is "a significant or substantial physical injury." (Pen. Code, § 12022.7, subd. (f).) There was sufficient evidence of great bodily injury.

Evidence showed Edwards headbutted and punched Aguayo's face many times. A witness testified Aguayo appeared to have a broken eye socket, "when it gets fractured, swells up and pretty much closes the eyelid. [¶] . . . [¶] You have to get hit very, very hard, usually by—an elbow will do that."

There was "a lot of blood and swelling."

Edwards's attack left Aguayo unresponsive. "He was unconscious, and I couldn't tell if he was breathing or not, and his eyes were shut."

The jury saw photos of Aguayo after the attack. The photos are in the record. They show Aguayo's face covered in blood.

The line between a significant injury and one that is not can be a fine one. Jurors are the ones to locate that line. (*People v. Cross* (2008) 45 Cal.4th 58, 64.) A sufficient " 'quantum of evidence' " supported this jury finding. (*Ibid.*)

III

Edwards's third issue is his claim the trial court abused its discretion by denying his *Romero* motion to strike his 2016 conviction for attempted robbery. (See *People v. Superior Court (Romero)* 13 Cal.4th 497.)

A trial court's refusal to strike a prior strike is an abuse of discretion only in limited circumstances. Examples are where the trial court was unaware of its discretion to dismiss; where the court considered impermissible factors; or where the sentencing norms established by the Three Strikes law produce an arbitrary or patently absurd result. It is not enough to show reasonable people might disagree about whether to strike a prior conviction. There is no abuse of discretion unless the trial court's decision is so irrational or arbitrary that no reasonable person could agree with it. (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637 (*Brugman*).)

The trial court is not required to state reasons for declining to exercise its discretion to strike a strike. We presume the trial court has considered all relevant factors in the absence of an affirmative record to the contrary. When the record is silent as to the trial court's reasons for declining to strike a prior strike, we

6

presume the court correctly applied the law. Only in an extraordinary case—where the relevant factors manifestly support the striking of a prior conviction and no reasonable minds could differ—would the failure to strike be an abuse of discretion. (*Brugman*, *supra*, (2021) 62 Cal.App.5th at p. 637.)

The trial court reasoned that the 2016 conviction was recent and, since then, Edwards had aggravated his criminal conduct.

Edwards's criminal history started with two misdemeanor convictions in 2013 for marijuana possession and trespassing. The next conviction was the 2016 strike for attempted robbery. (Pen. Code, § 213, subd. (b).) Edwards attacked Aguayo in 2017 and was convicted on November 9, 2020. During the pendency of this matter, in December 2018, prosecutors charged Edwards with battery by gassing. (§ 243.9, subd. (a).)

Edwards's central argument is the trial court abused its discretion by summarily dismissing Edwards's history of mental disorders while emphasizing he had been restored to competency for trial. Edwards claims his "documented and lengthy history of chronic and severe mental disorders, symptoms of which were evident at the time of his prior and current offenses, take him out of the spirit of the Three Strikes Law."

The trial court denied Edwards's request to strike his 2016 prior conviction for attempted robbery. The court observed this conviction was a "relatively recent case, in 2016, certainly recent compared to the time" when Edwards attacked Aguayo, which was in 2017. "Also, looking at [Edwards's] escalating conduct, I think that this is not the case where the court would exercise its discretion to strike the prior strike."

7

Reasonable people can disagree about whether Edwards's record of mental illness would support striking his conviction for attempted robbery.  Under the law, this is not enough.  The trial court was concerned by Edwards's recent and increasing threat to public safety.  This decision was neither irrational nor arbitrary. (E.g., *Brugman*, *supra*, 62 Cal.App.5th at pp. 638–640.)

## DISPOSITION

The judgment is affirmed.


WILEY, J.


We concur:


STRATTON, Acting P. J.


HARUTUNIAN, J.*

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.